## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRAVIS WATKINS**,<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**HARRISBURG BUREAU OF POLICE OFFICER MARC HOWELL, in his Individual Capacity,  POLICE OFFICER ESTEBAN RESTREPO, in his Individual Capacity, and OFFICERS JOHN DOE 1 & 2, in their Individual Capacities,**<br>`<br><br>      **Defendants.** | **Civil Action No.:**<br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1.    Plaintiff Travis Watkins brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, to redress violations of his well-established civil rights under the First and Fourth Amendments to the U.S. Constitution, and pursuant to State common law for the tortious injuries which Defendants inflicted upon him.

2.    The claims stated herein arise from a battery committed upon Plaintiff while he was about thirty feet from a melee outside a bar, in which he played no part, standing near his parked car. The claims stated herein arise from Harrisburg Officer Marc Howell's use of excessive force against and retaliation against Plaintiff for yelling out, "Hey! Ease up!" as several other officers arrested and roughly cuffed one of the combatants.  Officer Howell's act of spraying Plaintiff directly in the face with Mace from under five feet away and without warning Plaintiff – who had neither committed nor was suspected of having committed a crime, who presented no danger, who was not under arrest, and who was thirty feet away from and not interfering with the officers dealing with the melee – was an excessive use of force under clearly established law.

## JURISDICTION, VENUE, AND JURY DEMAND

3.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First and Fourth Amendments to the United States Constitution, and the common law of the Commonwealth of Pennsylvania.  This Court's original jurisdiction over Plaintiff's federal claims is established by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because this action seeks redress for the violation of, *inter alia*, federal constitutional and civil rights.

4.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §

1367, over Plaintiff's state common law claims and causes of action stated herein

because those claims derive from the same nucleus of operative facts as the federal

claims stated herein, and are part of the same case or controversy that gives rise to

those federal claims and causes of action.

5.     Venue is proper in the United States District Court for the Middle

District of Pennsylvania, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and §

1402(b) because the events and conduct giving rise to the claims stated herein

occurred in this District.

6.     Plaintiff demands a trial by jury of all issues in this matter pursuant to

Fed. R. Civ. P. 38(b).

## <u>THE PARTIES</u>

7.     Plaintiff Travis Watkins is a citizen of the United States and a resident

of Harrisburg, in Dauphin County, Pennsylvania.

8.      Harrisburg Bureau of Police Officer Marc Howell was at all relevant

times an employee of the Harrisburg City Bureau of Police holding the rank of

Police Officer.  Defendant Officer Howell is sued in his Individual Capacity.

9.     Harrisburg City Police Officer Esteban Restrepo was at all relevant

times an employee of the Harrisburg City Bureau of Police holding the rank of

Police Officer.  Defendant Officer Restrepo is sued in his Individual Capacity.

10.     Harrisburg City Police Officers John Doe 1 and John Doe 2 were at

all relevant times employees of the Harrisburg City Bureau of Police holding the

rank of Police Officer.  Defendant Officers John Doe 1 and John Doe 2 are sued in

their Individual Capacities.

## SPECIFIC ALLEGATIONS OF FACT

11.     On Wednesday, March 22, 2023, Plaintiff Travis Watkins, a resident

of the City Harrisburg, was enjoying a beer after work at Arooga's, a popular

Harrisburg tavern and sports bar on North 2nd Street in Harrisburg.

12.     At all relevant times, Mr. Watkins was a federal employee, with 17

years as an Equal Employment Opportunity Specialist at the U.S. Department of

Agriculture.  Prior to March 22, 2023, Mr. Watkins was not "known to the police"

and had no criminal record.

13.     At all relevant times Mr. Watkins was however and in fact "known to

the police" –  as a law-abiding citizen who had never been involved in any criminal

conduct of any kind.  Specifically, by the time of the events complained of herein,

Mr. Watkins, a Harrisburg resident, had been on friendly terms with Harrisburg

City Police Chief Thomas Carter for at least a few years.  Over that period, Mr. Watkins and Chief Carter would regularly greet each other with a handshake and exchange of pleasantries whenever their paths crossed in Harrisburg.

14.    On Wednesday evening, March 22, 2023, Mr. Watkins stood in Arooga's outdoor area, designated for patrons' use, about ten to fifteen feet away from his car, which was new and was parked in the parking lane on the same side of the street as Arooga's.

15.    As Mr. Watkins stood in Arooga's outdoor area, a fight broke out in the street.  Hearing the commotion, Mr. Watkins turned and saw two or three people fighting and pushing each other up against his new car.

16.    Mr. Watkins did not know, and had had no interaction with, any of the individuals who were fighting.

17.    Mr. Watkins set down his beer and started walking toward his car. By the time he got there, the fight had moved into the street, away from his car.

18.    As he approached his car, Mr. Watkins' attention shifted to some Harrisburg City officers who were dealing with the fighting individuals.  The officers had stopped the fight and had at least one of the combatants subdued.

19.    Mr. Watkins proceeded to the front of his car and stood calmly on

COMPLAINT FOR DAMAGES

North 2nd Street, in the same lane as and not far from a police cruiser which was stationed there the entire evening.

20.     At that point, Mr. Watkins was standing approximately thirty feet from the officers in the street.  He was standing in front of his car, about ten feet from Defendant Officer Howell.

21.     Defendant Officer Howell was standing between Mr. Watkins and the commotion in the street, about twenty feet from officers who were dealing with one of the individuals who had been fighting, in the same lane of North 2nd Street in which a police cruiser was stationed the entire evening.

22.     At no time was Defendant Officer Howell one of the officers subduing or physically arresting the individual in the street.

23.     At no time was Defendant Officer Howell within fifteen feet of the officers subduing or physically arresting the individual in the street.

24.     Two young women were in or near the middle of the street, near the officers who had subdued and cuffed one of the fighting individuals.

25.     One of the young women in or near the middle of the street was circling the officers who were subduing and arresting the individual.

26.     The young woman who was in or near the middle of the street, near to

COMPLAINT FOR DAMAGES

and circling the officers who had subdued and cuffed one of the fighting individuals, was pleading with the Officers.

27.    Three or four officers who had subdued the arrestee were in the immediate area of the arrestee, who was now prone, with his face pressed into the street with one officer's knee pressed firmly on his back.

28.    Three or four officers who had subdued the arrestee surrounded and were no more than six feet from the arrestee, who was now prone, with his face pressed into the street and one officer's knee pressed firmly on his back.

29.    Mr. Watkins thought the officers were being unnecessarily rough with the arrestee, who was completely subdued and under control.

30.    From about thirty feet away, Mr. Watkins yelled out "Hey, ease up!"

31.    Officer Howell, who was about fifteen feet from the officers who had completely subdued and taken under control the arrestee, then turned, rushed at Mr. Watkins shouting "Back up!", and, when he reached a distance of five feet from Mr. Watkins, sprayed him directly in the face with a stream of Mace.

32.    When Officer Howell turned and rushed Mr. Watkins shouting at him, Mr. Watkins, startled, put his hands up, palms-forward, in a universally understood posture showing that he was not hostile and was not a threat.

COMPLAINT FOR DAMAGES

33.    Officer Howell did not give Mr. Watkins the time or an opportunity to actually back up after yelling "Back up."

34.    Officer Howell rushed at Mr. Watkins quickly, from about ten feet away.

35.    Officer Howell began to move toward Mr. Watkins from ten feet away before he yelled "Back up."

36.    Moving quickly toward Mr. Watkins, Officer Howell covered about five feet in one or two fast strides.

37.    It took Officer Howell no more than two seconds to move about five feet toward Mr. Watkins in one or two fast strides.

38.    When he reached a range of about five feet from Mr. Watkins, Officer Howell immediately sprayed Mr. Watkins directly in the face with a stream of mace.

39.    No more than two seconds elapsed from the moment Officer Howell first moved toward Mr. Watkins and yelled "Back up!" until the moment he sprayed Mr. Watkins directly in the face with a stream of mace from a range of five feet.

40.    Before Officer Howell sprayed a stream of mace directly into Mr.

Watkins' face from a range of five feet, Mr. Watkins did not resist any effort by Officer Howell to control him.

41.    Before Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had not arrested Mr. Watkins and had no objective information which could suggest that Mr. Watkins was attempting to evade him or any other officer, or to avoid arrest.

42.    Before Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which could suggest that Mr. Watkins was interfering with the Harrisburg City police officers who had subdued and arrested the subject in the street.

43.    Before Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which could suggest that any Officer or bystander was in any danger.

44.    Before Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which could suggest that Harrisburg police officers did not have the incident in the street completely under control.

45.    The incident in the street had consisted of a fight between two

individuals, which broke out no more than 20 yards from at least four police officers, who had stopped the fight and subdued and arrested one of the individuals before Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet.

46.    Before Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which could suggest that Mr. Watkins presented any threat of physical injury to any person including Officer Howell, any other Officer on the scene, or any bystander present.

47.    When Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which could suggest that Mr. Watkins was in possession of a weapon.

48.    When Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which could suggest that Mr. Watkins had been fighting with or threatened anyone or had engaged in violent or tumultuous behavior.

49.    When Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet, he had no objective information which

could suggest that Mr. Watkins had made an unreasonable noise.

50.    When Officer Howell sprayed a stream of mace directly into Mr. Watkins' face from a range of five feet no more than two or three seconds after turning around to face him and yelling "Get back," Mr. Watkins was startled and surprised.

51.    After Officer Howell sprayed a stream of mace directly into his face from a range of five feet, Mr. Watkins used his sweatshirt to wipe his face and asked for water.  He stumbled back against a parked car, blinded.  Although he couldn't see anything, he heard Officer Howell say, "get out of the street or I spray again."

52.    After a few seconds, Mr. Watkins heard a second voice say, "did you get this guy's ID" and felt a person grab his wrist.  Mr. Watkins later learned that person was Harrisburg Police Officer Esteban Restrepo.

53.    Mr. Watkins then heard Officer Restrepo say "Motherfucker stop resisting," after which he felt Officer Restrepo yank his wrist.

54.    Mr. Watkins had not been given any order by Officer Restrepo.

55.    Mr. Watkins had not resisted any order given by Officer Restrepo.

56.    Mr. Watkins has long dreadlocks.  Officer Restrepo then yanked on

Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle.

57.    Before Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, Mr. Watkins did not resist any effort by Officer Restrepo or any other Officer to control him.

58.    Before Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that Mr. Watkins was attempting to evade him or any other Officer, or to avoid arrest.

59.    Before Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that Mr. Watkins was interfering with the Harrisburg police officers who had subdued and arrested the subject in the street.

60.    Before Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that any Officer or bystander was in any danger.

61.    Before Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that Harrisburg police officers did not have the

incident in the street completely under control.

62.    When Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that Mr. Watkins presented any threat of physical injury to any person including Officer Howell, any other officer on the scene, or any bystander present.

63.    When Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that Mr. Watkins was in possession of a weapon.

64.    When Officer Restrepo yanked on Mr. Watkins' dreadlocks and moved him bodily using his dreadlocks as a handle, he had no objective information which could suggest that Mr. Watkins had been fighting with or threatened anyone, or had engaged in violent or tumultuous behavior.

65.    Mr. Watkins then immediately felt two additional officers, Defendant Officer Doe 1 and Defendant Officer Doe 2 pulling, on him.  Each of Defendant Officers Doe 1 and 2, and Officer Restrepo, pulled Mr. Watkins in a different direction.  Defendant Officer Doe 1 pulled Mr. Watkins to the right, while Defendant Officer Doe 2 pulled Mr. Watkins to the left.

66.    At the same time, one of Defendant Officers Doe 1 or 2 yelled "Stop resisting."  Mr. Watkins replied and stated again that he was not resisting.  Mr. Watkins was in fact not resisting.

67.    Defendant Officers Doe 1 and 2 and Restrepo then dragged Mr. Watkins in the direction of Arooga's and tackled him. Mr. Watkins' shoulder and body hit the street with at least two officers on top of him.

68.    Defendant Officers Doe 1 and 2 and Restrepo continued to yell "stop resisting" although Mr. Watkins was not resisting, had not resisted any officer at any point, and continued to say that he was not resisting.

69.    After Defendant Officers Doe 1 and 2 and Restrepo tackled Mr. Watkins, one of Defendant Officers Doe 1 or 2 or Restrepo elbowed his head sharply into the ground. Mr. Watkins then heard an officer yell "Tase him!" and another yell "Shoot him!"

70.    Defendant Officers Doe 1 and 2 had no objective information at any time which could suggest that Mr. Watkins was attempting to evade either of them or any other Officer, or to avoid arrest.

71.    Defendant Officers Doe 1 and 2 had no objective information at any time which could suggest that Mr. Watkins was interfering with the Harrisburg

police officers who had subdued and arrested the subject in the street.

72.     Defendant Officers Doe 1 and 2 had no objective information at any time which could suggest that any Officer or bystander was in any danger.

73.     Defendant Officers Doe 1 and 2 had no objective information at any time which could suggest that Harrisburg police officers did not have the incident in the street completely under control.

74.     Mr. Watkins was lifted off the ground and moved toward a prisoner transport. His front tooth was broken, and his hand was bleeding.  He asked for water to clean his eyes, which were still blinded with mace. Officers Howell, Restrepo, or Officers Doe 1 or 2 refused and denied him access to water to clean his eyes.

75.     Although they had violently assaulted and arrested Mr. Watkins and placed him in handcuffs, none of Officers Howell, Restrepo, or Officers Doe 1 or 2 told Mr. Watkins what crime or offense he would be charged with.

76.     Although they had violently assaulted and arrested Mr. Watkins and placed him in handcuffs, none of Officers Howell, Restrepo, or Officers Doe 1 or 2 told Mr. Watkins what conduct he had engaged in which would cause him to be charged with a crime or offense.

77.    Mr. Watkins was arrested for disorderly conduct on the basis that he had been in the street.

78.    Mr. Watkins was placed in a prisoner transport vehicle and taken to the Dauphin County Central Booking Facility at the Dauphin County Judicial Center.

79.    The young woman who had been circling and pleading with three or four Officers in or near the middle of the street as they subdued and cuffed one of the fighting individuals was not in the prisoner transport vehicle.

80.    Mr. Watkins did not see the young woman who had been in or near the middle of the street at the Dauphin County Central Booking Facility.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### EXCESSIVE FORCE
### 42 U.S.C. § 1983 and 4th Amendment, U.S. Const.
**(Against All Defendants, In Their Individual Capacities)**

81.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

82.    Defendants, while acting under color of State law in uniform and on duty as Officers of the Harrisburg City Police Bureau, engaged in conduct which

constituted a violation of rights that are clearly established under the Fourth Amendment to the Constitution of the United States.

83.    Defendant Officer Howell used and subjected Plaintiff to excessive force by spraying Plaintiff directly in the face with a stream of Mace despite the fact that Officer Howell did not possess any objective information that would lead a reasonable officer to believe that Mr. Watkins: (i) had committed or was about to commit any violent crime, felony, or other crime involving the infliction or threatened infliction of serious harm; (ii) presented any immediate danger to any Officer, including Officer Howell, or to any bystander; (iii) was attempting to evade him or any other officer, or to avoid arrest; (iv) was armed, or (v) was interfering or had interfered with the Harrisburg police officers who had subdued and arrested the subject in the street.

84.    Defendant Officer Howell sprayed Plaintiff directly in the face with a stream of Mace despite the fact that prior to spraying Plaintiff, he had not arrested Plaintiff, had not attempted to arrest Plaintiff, had not attempted to move Plaintiff from the street, and had not attempted any other action with regard to Plaintiff.

85.    Defendant Officers Restrepo, Doe 1, and Doe 2 used and subjected Plaintiff to excessive force by tackling him and elbowing his head sharply into the

pavement despite the fact that none of them possessed any objective information that would lead a reasonable officer to believe that Mr. Watkins: (i) had committed or was about to commit any violent crime, felony, or other crime involving the infliction or threatened infliction of serious harm; (ii) presented any immediate danger to any of them, or to any other Officer, or to any bystander; (iii) was attempting to evade any of them or any other Officer, or to avoid arrest; (iv) was armed, or (v) was interfering or had interfered with the Harrisburg police officers who had subdued and arrested the subject in the street.

86.     Defendant Officer Restrepo used and subjected Plaintiff to excessive force by pulling suddenly and forcefully on Mr. Watkins' dreadlocks and moving him bodily using his dreadlocks as a handle, despite the fact Officer Restrepo did not possess any objective information that would lead a reasonable officer to believe that Mr. Watkins: (i) had committed or was about to commit any violent crime, felony, or other crime involving the infliction or threatened infliction of serious harm; (ii) presented any immediate danger to him, or to any other Officer, or to any bystander; (iii) was attempting to evade him or any other officer, or to avoid arrest; (iv) was armed, or (v) was interfering or had interfered with the Harrisburg police officers who had subdued and arrested the subject in the street.

COMPLAINT FOR DAMAGES

87.    Defendants' wrongful use of excessive force against Plaintiff as alleged above was objectively unreasonable in light of the totality of information available to and actually known by them at the time they employed that force.

88.    Defendants' wrongful use of excessive force against Plaintiff as alleged above violated Plaintiff's well-established right to be free from excessive force in the course of an arrest.

89.    Defendants' wrongful use of excessive force against Plaintiff as alleged above violated Plaintiff's well-established right, guaranteed by the Fourth Amendment, to be free of such force.

90.    As a direct and proximate result of Defendants' wrongful use of excessive force against Plaintiff as alleged above, Plaintiff suffered physical injuries, pain, fear, humiliation, anxiety, and emotional distress.

## SECOND CAUSE OF ACTION
## FIRST AMENDMENT RETALIATION
## 42 U.S.C. § 1983 and 1st Amendment, U.S. Const.
### (Against Defendant Officer Howell, In His Individual Capacity)

91.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

92.     Defendant Officer Howell, while acting under color of State law in uniform and on duty as an Officer of the Harrisburg City Police Bureau, engaged in conduct which constituted a violation of rights that are clearly established under the First Amendment to the Constitution of the United States.

93.     Plaintiff's act of yelling out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were approximately thirty feet away from him was an act that is protected by the First Amendment of the United States Constitution.

94.     Defendant Officer Howell sprayed Plaintiff directly in the face with Mace no more than five seconds after Plaintiff engaged in the constitutionally protected act of yelling out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were approximately thirty feet away from him.

95.     Defendant Officer Howell sprayed Plaintiff directly in the face with Mace as a retaliatory act no more than five seconds after Plaintiff engaged in the constitutionally protected act of yelling out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were approximately thirty feet away from him.

96.    Defendant Officer Howell sprayed Plaintiff directly in the face with Mace in direct response to and because Plaintiff engaged in the constitutionally protected act of yelling out the words "Hey, ease up!" as a commentary on the actions of police officers who were approximately thirty feet away from him, as demonstrated by the fact that Officer Howell sprayed Plaintiff no more than five seconds after Plaintiff yelled out those words.

97.    Defendant Officer Howell's spraying of Plaintiff directly in the face with Mace would deter a person of ordinary firmness from continuing to speak out regarding police activity approximately thirty feet away.

98.    Plaintiff is a person of at least ordinary firmness. Defendant Officer Howell's spraying of Plaintiff directly in the face with Mace did in fact deter Plaintiff from continuing to speak out regarding the police activity that was approximately thirty feet away.

**THIRD CAUSE OF ACTION**
**RETALIATORY ARREST**
**42 U.S.C. § 1983 and 1st and 4th Amendments, U.S. Const.**
**(Against Defendant Officer Howell, In His Individual Capacity)**

99.    The Plaintiff repeats and realleges the foregoing paragraphs as if the

same were fully set forth at length herein.

100.   Defendant Officer Howell, while acting under color of State law in uniform and on duty as an Officer of the Harrisburg City Police Bureau, engaged in conduct which constituted a violation of rights that are clearly established under the First and Fourth Amendments to the Constitution of the United States.

101.   Plaintiff's act of yelling out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were approximately thirty feet away from him was an act that is protected by the First Amendment of the United States Constitution.

102.   A few moments to Plaintiff yelling out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were subduing and arresting one of the formerly fighting individuals, a young woman in or near the middle of the street, much nearer to the Officers who had subdued and cuffed than was Plaintiff, was circling those Officers and pleading with them.

103.   Upon information and belief, the young woman who circled and plead with the police in the street was not arrested.

104.   Defendant Officer Howell seized and arrested Plaintiff no more than five seconds after Plaintiff engaged in the constitutionally protected act of yelling

out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were approximately thirty feet away from him.

105.   Defendant Officer Howell seized and arrested Plaintiff as a retaliatory act no more than five seconds after Plaintiff engaged in the constitutionally protected act of yelling out the words "Hey, ease up!" in response to and as a commentary on the actions of police officers who were approximately thirty feet away from him.

106.   Defendant Officer Howell seized and arrested Plaintiff in direct response to and because Plaintiff engaged in the constitutionally protected act of yelling out the words "Hey, ease up!" as a commentary on the actions of police officers who were approximately thirty feet away from him, as demonstrated by the fact that the young woman who circled and pleading with the police in the street was not arrested.

107.   Defendant Officer Howell's seizure and arrest of Plaintiff would deter a person of ordinary firmness from continuing to speak out regarding police activity approximately thirty feet away.

108.   Plaintiff is a person of at least ordinary firmness. Defendant Officer Howell's seizure and arrest of Plaintiff did in fact deter Plaintiff from continuing to

speak out regarding the police activity that was approximately thirty feet away.

## FOURTH CAUSE OF ACTION
## <u>BATTERY</u>
### (Against All Defendants)

109.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

110.    Defendant Officer Howell's act of spraying Plaintiff directly in the face with Mace from under five feet away was a harmful and offensive contact.

111.    Defendant Officer Howell intended to harmfully and offensively physically contact Plaintiff when he sprayed Plaintiff directly in the face with Mace from under five feet away.

112.    Plaintiff did not consent to being sprayed Plaintiff directly in the face with Mace from under five feet away.

113.    Defendant Officer Howell's act of spraying Plaintiff directly in the face with Mace from under five feet away was not otherwise privileged or authorized by law.

114.    Defendant Officer Restrepo's act of pulling suddenly and forcefully on Mr. Watkins' dreadlocks and moving him bodily using his dreadlocks as a

handle was a harmful and offensive contact.

115.   Defendant Officer Restrepo intended to harmfully and offensively physically contact Plaintiff when he pulled suddenly and forcefully on Plaintiff's dreadlocks and moved Plaintiff bodily by using his dreadlocks as a handle.

116.   Plaintiff did not consent to his dreadlocks being pulled suddenly and forcefully or to being moved bodily by Officer Restrepo using his dreadlocks as a handle.

117.   Defendant Officer Restrepo's act of pulling suddenly and forcefully on Plaintiff's dreadlocks and moving Plaintiff bodily by using his dreadlocks as a handle was not otherwise privileged or authorized by law.

118.   Defendant Officers' Restrepo, John Doe 1 and John Doe 2 act of tackling Plaintiff and elbowing his head sharply into the pavement was a harmful and offensive contact.

119.   Defendant Officers Restrepo, John Doe 1 and John Doe 2 intended to harmfully and offensively physically contact Plaintiff when they tackled Plaintiff and elbowed his head sharply into the pavement.

120.   Plaintiff did not consent to being tackled or having his head elbowed sharply into the pavement.

121.   Defendant Officers' Restrepo, John Doe 1 and John Doe 2 act of tackling Plaintiff and elbowing his head sharply into the pavement was not otherwise privileged or authorized by law.

122.   As a result of the Defendants' batteries upon him, Plaintiff suffered physical and mental injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Travis Watkins demands judgment against Defendants on each cause of action in amounts to be determined upon the trial of this action, and inclusive of punitive damages, attorneys' fees inclusive of costs and disbursements of this action, interest and such other relief as is appropriate under the law, and the cost of the suit herein, including reasonable attorney's fees pursuant to 42 U.S.C. § 1983, 1988.

Dated:
   March 18, 2025

Respectfully submitted,

/s/ Leticia C. Chavez-Freed
Leticia C. Chavez-Freed, Esq.
PA323615
The Chavez Freed Law Office
2600 North 3rd Street

COMPLAINT FOR DAMAGES

Harrisburg, PA 17110
(717) 893-5698
Leticia@Chavez-FreedLaw.com

*Counsel for Plaintiff*