

200 Corporate Center Drive, Suite 300, Camp Hill, PA 17011
(717) 651-3500  Fax (717) 651-3707

Direct Dial:  (717) 651-3529
Email:  awnorfleet@mdwcg.com

January 21, 2026

**VIA ECF FILING ONLY**

January 21, 2026

The Honorable Jennifer P. Wilson
Sylvia H. Rambo United States Courthouse
1501 N. 6th Street
Harrisburg, PA  17102

**RE:  Watkins v. Howell, et al.**
      **Docket No. 1:25-cv-00495-JPW**

Dear Judge Wilson:

I represent Officer Restrepo in the above captioned civil action.  The Harrisburg Bureau of Police also asked me to respond to Plaintiff's document subpoena served on the Harrisburg Bureau of Police ("the Bureau").[1]  It is in these capacities that I respond to Plaintiff's letter brief outlining a discovery dispute regarding the production of documents in response to Plaintiff's subpoena, as well as the ongoing efforts made to resolve the dispute.

I.       Procedural History.

---

[1] So there is no misunderstanding, undersigned counsel was not in possession of the Internal Affairs (IA) documents in question at the time the Bureau's document production was made.  Undersigned counsel was not in possession of the IA documents until last week.

On January 16, 2026, counsel for the Plaintiff submitted a lengthy letter to the Court discussing a discovery dispute between Plaintiff and the Bureau. Your Honor's motions practice requires counsel for the parties to confer with one another to attempt to resolve the dispute without Court intervention. The parties are required to file a letter with the Court explaining the nature of the dispute and stating whether and when counsel conferred to resolve the dispute. Because the letter in this case was not filed jointly, the Bureau of Police is permitted three business days to file a letter responding to the original dispute letter. Because the Solicitor for the City of Harrisburg, as well as undersigned counsel, were collaborating with Plaintiff's counsel to resolve the outstanding issues, the Bureau of Police does not require additional time to respond to the original dispute letter.

Out of respect for judicial economy, the Bureau of Police will identify the portions of the original dispute letter the Bureau finds common ground with counsel for the Plaintiff. The Bureau will also address portions of the original dispute letter it disagrees with. Finally, the Bureau will address a reasonable solution to resolve the dispute.

II.     The Original Letter – Areas of Common Ground.

The Bureau of Police agrees that on or about October 10, 2025, Plaintiff issued a subpoena *duces tecum* to the Bureau pursuant to Federal Rules of Civil Procedure Rule 45. The Plaintiff did not name the City of Harrisburg or the Bureau as a party to this civil action. The Bureau chose not to object to Plaintiff directing the subpoena to the Bureau instead of the City of Harrisburg. The City Solicitor, Neil Grover, agreed to accept service of the subpoena.

2

The City agrees that the subpoena sought the production of documents, including policies promulgated by the Bureau of Police regarding the use of OC spray or, as referred to by Plaintiff, "pepper spray." Plaintiff also requested video footage of Plaintiff's arrest if captured by Officer Howell and Officer Restrepo's Body Worn Cameras ("BWC"). Finally, Plaintiff requested all documents and records relevant to the named Defendants, Officers Howell and Restrepo.

The Bureau agrees that on or about November 14, 2025, the Bureau produced documents to the Plaintiff in response to the subpoena. A general order regarding the use of OC spray was produced, but heavily redacted. The redaction was necessary because the the general order describes when and how OC spray should be deployed by police officers during specific situations. Police officers and the public are placed in potential danger if documents related to the number of police officers assigned to respond to certain situations, or describing specific police tactics, and how and when specific tactics will be used in response to emergency (and potentially life threatening) situations are made available to the public.[2]

Examining the issue of the request for the productions of video from Officer Howell and Officer Restrepo's BWCs, the Bureau of Police advised counsel for the Plaintiff that video would be produced, if portions of the video depicting the arrests of individuals not parties to this civil action were redacted. Initially, counsel for the Plaintiff objected to the videos being redacted. As the parties pursued a resolution of the dispute, undersigned counsel agreed to recommend to

---

[2] Plaintiff's counsel identifies undersigned counsel as representing Defendants Howell and Restrepo. Undersigned counsel believes Plaintiff's counsel intended to identify him as representing Officer (now Corporal) Restrepo, only. Attorney Christopher Gerber represents Officer Howell.

3

Solicitor Grover that the issue might be resolved if the identities of any individual(s) arrested, but not parties to this action, could be blurred. Specifically, the Bureau would attempt to blur any portions of the video identifying the face(s) of those individuals being arrested, their names being used, or their identification was revealed through an identification card/license/identifying document. Undersigned counsel explained to counsel for the Plaintiff that the Bureau did not intend to redact or blur the identities/likeness of individuals simply walking in the downtown area and during Plaintiff's arrest.

On January 13, 2026, counsel for the Plaintiff and undersigned counsel met and conferred, telephonically, to attempt to resolve the outstanding discovery issues. As discussed in the original dispute letter, counsel for the Plaintiff offered to execute a confidentiality agreement with the Bureau of Police. Specifically, counsel for the Plaintiff agreed to accept the BWC video with the faces/identifiers of the non-party arrestees blurred. (*See,* ECF DOC. 27, p.5, ¶2). Undersigned counsel explained that a representative of the Bureau met with the manufacturers of the BWC software to determine if only the portions of the video depicting the arrest of non-party individuals could be redacted or blurred. (*See*, DOC. 27-4, p.1, ¶1).[3] Counsel for Plaintiff described the meet and confer as "constructive." (ECF DOC. 27-7, p.2). Plaintiff summarized her understanding of

---

[3] Undersigned counsel sent to counsel for the Plaintiff a 9-page response discussing, individually, each of Plaintiff's document requests, the documents produced by the Bureau of Police and the reasons for redacting portions of the documents. For example, the Bureau of Police note that the Police Incident Form – Supplemental Report (HBP 146-167) was produced, the first page is responsive (p. 146), but the remaining pages were redacted because the incidents were not related to Plaintiff's arrest. These pages were included, but redacted, to avoid a situation where the Bureau of Police was accused of producing only one page of the report when more than one page exists. (*See,* Doc. 24-7, p.8).

the proposed agreements (described as "memorializing our agreements"). *Id.* Undersigned counsel responded, via electronic mail sent the following day, confirming that while the Bureau was investigating options for the video production, it was unknown if blurring an individual's face and other identifiers was an option. Undersigned counsel stated that he would forward a proposed confidentiality agreement to Solicitor Grover, and, while the Bureau would file a protective order, if necessary, due to other deadlines, the protective order would not be filed by the close of business on January 15, 2026. Undersigned counsel forwarded an initial draft of a proposed confidentiality agreement to Solicitor Grover for his review. Because of prior commitments, undersigned counsel was unable to deliver a draft of the proposed confidentiality agreement to counsel for Plaintiff until January 16, 2026. Undersigned counsel forwarded the proposed agreement at 12:18 PM on January 16, 2026. Undersigned counsel and counsel for Plaintiff spoke later that afternoon. At 4:38 PM, counsel for Plaintiff responded via electronic mail and stated:

> Forgive my brevity: doing this via voice:
> Short answer:
> I read the proposed agreement: No.
> 1) Definition of Con Docs does not encompass BWC.
> 2) Unusually restrictive procedure.
> 3) Contains description of redactions which I have no basis to affirm or stipulate
> 4) description of redactions is misleading.
> Some of these items will be in the letter.

Undersigned counsel responded at 5:07 PM:[4]

---

[4] Likely due to time constraints, counsel for the Plaintiff did not attach the exchanged electronic mail as exhibits to the original letter. Undersigned counsel does not attach electronic correspondence between counsel unless

5

(1) . . . the Confidentiality Agreement addresses the BWC and notes that the City will produce the redacted or blurred video. During our meet and confer conference– we discussed the City's concerns. You suggested the possibility of the City blurring information that would identify the other individuals arrested (the individual's face or an identification card, etc). I discussed that with the City.

(2) I do not recall the last case in which we used a confidentiality agreement – perhaps King? I will check. This is the CA agreement we use on a regular basis. If you would identify the procedures and the restrictive portions of the proposed CA, that will be helpful. We must have language in the agreement that discusses a process regarding confidentiality.

(3) I assume this is the language you are objecting to:

> The parties acknowledge that the Confidential Documents contain confidential and/or proprietary information, the disclosure of which would cause harm to the Bureau of Police and/or the City and/or the individual Defendant(s).

Please suggest alternative language. I will discuss the following language with the City:

> The City/Bureau of Police believe that the Confidential Documents contain confidential and/or proprietary information, the disclosure of which would cause harm to the Bureau of Police and/or the City and/or the individual Defendants.

I cannot commit to new language without the City's approval. That said, this seems to address your concern with Plaintiff acknowledging that the documents contain confidential and/or proprietary information while still protecting the documents. If this satisfies your concerns, I will discuss the amended language with the City.

Undersigned counsel has not received a response from counsel for the Plaintiff regarding proposed changes to the draft confidentiality agreement. As outlined in the above responses, if

---

ordered to by the Court. Undersigned counsel will make copies of the electronic correspondence and submit the same if instructed to do so by the Court.

counsel for the Plaintiff identifies the sections(s) of the proposed agreement Plaintiff objects to and/or suggests alternative language, the Bureau is ready to discuss proposed changes to the draft confidentiality agreement.

    III.    <u>The Original Dispute Letter – Areas of Disagreement</u>

Plaintiff relies on *United States v. Manigault*, 2024 U.S. App. LEXIS 24435, 2024 WL 4298144 (3d Cir. Sept. 26, 2024) for the proposition that an individual has no right to privacy related to their public activities. The Bureau disagrees. First, *Manigault* is a non-precedential opinion under the Third Circuit Internal Operating Procedure Rule 5.7. The opinion is not regarded as precedent which binds this Court. Second, *Manigault* is a criminal case, not a civil case. Next, the issues in *Manigault* are whether the video from a citizen's home camera was admissible in a criminal trial to show the actions of the defendant related to alleged criminal activity– not a civil trial. Specifically, the defendant in *Manigault* argued that the District Court erred in admitting the video recovered by a detective from a private residence because the video was not sufficiently authenticated. *Id*. at *6. The Third Circuit determined that the criminal defendant lacked an expectation of privacy in surveillance video provided by a homeowner. *Id*. at *14. The Third Circuit, as noted by counsel for Plaintiff, held that what a person knowingly exposes to the public is not a subject of Fourth Amendment protection. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 349, 88 S. Ct. 507, 19 L. Ed.2d 576 (1967). This is not a Fourth Amendment case. Plaintiff is not seeking to preclude the video of his arrest.

As undersigned counsel has discussed, verbally, with counsel for Plaintiff, the Bureau is concerned that producing the unredacted video of a non-party being arrested is a potential violation of the Criminal History Record Information Act ("CHRIA"). Specifically, that by producing the unredacted video, the Bureau is producing information defined as protected under CHRIA. Protected information under CHRIA includes investigative information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include *modis operandi* information. (*See*, 18 Pa. C.S.A. §9106, Section 2.1). Recognizing that a record has some connection to a criminal proceeding does not automatically exempt it under CHRIA, video recordings, like dash camera, may contain information relating to a criminal investigation, including witness interviews, interrogations, intoxication testing and other investigative work. *Pennsylvania State Police v. Grove*, 119 A.3d 1102 (Pa. Cmwlth. 2015) (Grove I), affirmed in part, reversed in part, and remanded, *Pennsylvania State Police v. Grove,* 161 A.3d 877 (Pa. 2017) *(Grove II)*. In *Grove* II, the Pennsylvania Supreme Court agreed that dash cam video (referred to as "MVR") are not automatically exempt from disclosure as criminal investigative information under CHRIA, and should be reviewed on a case-by-case basis. *Diveglia v. Pa. State Police*, 2017 Pa. Commw. Unpub. LEXIS 652 at *14 (Pa. Commw. Ct. 2017) (Unpublished) (citing *Pennsylvania State Police v. Grove,* 161 A.3d 877 (Pa. 2017) *(Grove II)*.[5] To be clear, the Bureau is not arguing that Plaintiff, under Federal Rule of Civil Procedure 26 is not entitled to discovery in the form of the

---

[5] A copy of the *Diveglia* decision is attached as Exhibit B.

video of his arrest. Instead, the Bureau has been consistent in its position that only the identities of arrestees not parties to this action should be blurred or redacted to avoid disseminating investigative material to Plaintiff – a non-law enforcement agency. This is an issue the parties should be able to resolve.

Finally, the Bureau will address Plaintiff's arguments related to the requested IA files. In support of Plaintiff's request for the production of the entirety of the IA files for Officers Howell and Restrepo, Plaintiff cites *Groark v. Timek*, 989 F. Supp. 2d 378, 391 (D.N.J. 2013). The Bureau notes that the *Groark* Court reviewed the plaintiff's request for IA files in reference to the Plaintiff's *Monell* claim against the municipality employing the defendant police officers. As noted, "since plaintiff pleaded a *Monell* claim, and the claim is presently viable, Atlantic City must produce relevant non-privileged discovery regarding the claim." *Id*. at 389. There, the plaintiff pleaded that because the municipality acted with deliberate indifference to its inadequate customs, policies, and practices caused the violation of his constitutional rights, *Monell* discovery was not off limits. *Id*. Specifically, the section of the opinion titled "relevance" is based on the plaintiff's *Monell* claim. Here, Plaintiff has not pleaded a *Monell* claim against the City of Harrisburg. Instead, Plaintiff brings excessive force claims for one event against the individual officers. Therefore, the only relevant questions are (as alleged by Plaintiff): did Officer Howell use excessive force in deploying OC spray and did Officer Restrepo use excessive force when taking Plaintiff into custody. The entirety of the IA files for Officers Howell and Restrepo are not relevant.

Requests for information relating to government investigations, such as police internal affairs investigations can implicate a legitimate governmental need for confidentiality. *Grayson v. Dewitt*, No.1:15-CV-453, 2016 U.S. Dist. LEXIS 138189, 2016 WL 5801699, at *8-9, citing the balancing test set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). If this Court believes that IA documents related to this incident are relevant, as noted by the *Groark* Court, the Court should order the documents disclosed and precautions should be taken to protect the confidentiality of the Officers' IA files. The files should be designated as "Confidential" pursuant to the proposed Confidentiality Agreement the Bureau has asked Plaintiff to enter into and which will be filed with this Court. The distribution of the files should be limited to authorized individuals. Also, the files should only be used for the purpose of prosecution or defense of this action and not for any business, commercial, competitive, personal, or other purpose. Likewise, the personal information of Officers Howell and Restrepo is irrelevant and should be redacted. This includes social security numbers, addresses, telephone numbers, driver's license numbers, financial information, and information pertaining to their family members and friends (unless they are relevant witnesses). The Officers should also be permitted to request this Court seal the IA files or otherwise restrict public access. (See, *Groark*, 989 F. Supp. 2d 378, at 399-400.

    IV.    <u>Position of the Bureau of Police Regarding Resolution of the Discovery Dispute.</u>

The Bureau maintains that the discovery dispute can be resolved with (1) the execution of a confidentiality agreement that counsel for Plaintiff agreed to enter into that will include the

production of Defendant Officers' BWC video blurred or redacted related only to the identity of non-party individuals arrested during the incident in question, the general Order related to the use of OC spray, and the production of redacted documents responsive to Plaintiff's requests in unredacted form, and (2) an *in camera* review of the IA documents and a subsequent Order of Court denying Plaintiff's request for production of the Officers' entire IA file. If the Court directs the Bureau to produce certain IA documents, those documents ordered to be produced will be designated as confidential and the information within those documents will not be shared with any third party. Finaly, because the Bureau met and conferred with Plaintiff's counsel, the Bureau requests the opportunity to file an appropriate motion for a protective order along with an affidavit executed by Commissioner Carter.

Respectfully submitted,

*/S/Andrew W. Norfleet*

Andrew W. Norfleet
PA ATTORNEY No. 83894
MARSHALL DENNEHEY, PC
200 Corporate Drive, Suite 300
Camp Hill, PA 17011
(717) 651-3529
awnorfleet@mdwcg.com
On behalf of the Harrisburg Bureau of Police

11