IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRAVIS WATKINS, | : | Civil No. 1:25-CV-00495 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| POLICE OFFICER MARC HOWELL | : | |
| *et al.*, | : | |
| | : | Judge Jennifer P. Wilson |
| Defendants. | : | |

## ORDER

Presently before the court are two motions to quash Plaintiff's subpoena to the Harrisburg Bureau of Police ("HBP"), which is not a party to this lawsuit, filed by the HBP, Doc. 33, and Defendant Police Officer Marc Howell, Doc. 32. The motions are fully briefed and ripe for review. (Docs. 32, 33, 34, 36, 39, and 43.) For the reasons that follow, the motions will be granted in part and denied in part.

### BACKGROUND

Plaintiff filed a civil rights lawsuit in this court on March 18, 2025. (Doc. 1.) Plaintiff contends that he is entitled to compensatory and punitive damages as well as attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 to redress alleged violations of his First and Fourth Amendment rights and pursuant to Pennsylvania common law. Plaintiff's claims arise from an encounter between Plaintiff and

1

HPB Officers Marc Howell and Esteban Restrepo on March 19, 2023.[1]  (*Id.*)

Plaintiff asserts that Defendants Howell and Restrepo used excessive force in their

interactions with him that evening.  Accordingly, Plaintiff brings claims for use of

excessive force in violation of the Fourth Amendment, retaliation in violation of

the First Amendment, retaliatory arrest in violation of the First and Fourth

Amendments, and battery.  (*Id.*)  Defendant Howell filed an answer on June 9,

2025, and Defendant Restrepo filed an answer on June 20, 2025.  (Docs. 13, 17.)

Both Defendants asserted affirmative defenses including, but not limited to,

qualified immunity.  (*Id.*)

Plaintiff served the subpoena at issue on the HBP in October 2025, seeking

the production of 17 categories of documents.[2]  (Doc. 33-3.)  The court received a

letter from Plaintiff on January 16, 2025, advising the court that there is a

discovery dispute regarding this subpoena.  (Doc. 27.)  Plaintiff explained that

HBP produced certain redacted documents and a privilege log on November 14,

---

[1] Plaintiff has also named two John Doe Officer Defendants in the complaint.  (Doc. 1.)  Those officers have not been identified on the docket and there are no issues related to the Doe Defendants addressed in this order.  In addition, the date of the incident alleged in the complaint is March 22, 2023.  (Doc. 1.)  However, the correct date appears to be March 19, 2023.  (*See, e.g.*, Doc. 33, ¶ 2, n.3; Doc. 33-3.) Finally, the court understands that Defendant Restrepo now holds the title of Corporal, but will refer to him in the context of this litigation as Officer in order to avoid confusion.  (*See* Doc. 34, p. 1 n.2.)

[2] The subpoena describes the requested documents in Exhibit A, which lists the categories of documents with bullet points.  There are 17 bullet points describing the categories of documents requested.

2025.  (Doc. 27 at p. 2.)[3]  However, Plaintiff objected on January 2, 2026, and the parties communicated regarding their various disputes, including the potential of a stipulated confidentiality agreement.  (Doc. 27 pp. 2–6.)  Defendants responded by letter, Doc. 28, and the court held a telephonic discovery conference on January 28, 2026.  Following that conference, the court entered an order the same day encouraging the parties to continue their negotiations regarding a confidentiality agreement, and accepting HBP's representation that it would produce unredacted copies of HBP's OC Spray Policy and copies of the relevant body-worn camera footage with limited redactions once the parties execute a confidentiality agreement.  (Doc. 31.)  The parties filed their stipulation and protective confidentiality agreement on March 10, 2026.  (Doc. 44.)  On March 12, 2026, the court entered an order accepting the parties' confidentiality agreement.  (Doc. 45.)

In the January 28 order, the court also gave permission to HBP to file a motion to quash "with respect to disclosure of all of HBP's internal affairs documents concerning Defendants Howell and Restrepo."  (*Id*.)  During the January 28 conference, the court directed counsel for HBP to submit the responsive internal affairs documents to the court for *in camera* review, and the court

---

[3] For ease of reference, the court cites to the page numbers included in the CM/ECF header.

confirmed this directive by order entered on February 10, 2026.  (Doc. 35.)  The *in camera* submission was provided to the court on February 13, 2026.[4]

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 45(d)(3) governs the quashing of a subpoena.  Rule 45(d)(3)(A) states when a court *must* quash or modify a subpoena:

> (A) *When Required*.  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

Although not enumerated in Rule 45, "courts have incorporated relevance as a factor when determining motions to quash a subpoena." *United States v. Capone*, No. 3-cr-15-214, 2019 WL 108853, at *2 (M.D. Pa. Jan. 4, 2019) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)).  Indeed, a Rule 45 subpoena to produce documents must fall within the proper scope of discovery as defined by Rule 26(b)(1).  *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa.

---

[4] The documents submitted for in camera review include only the responsive Internal Affairs documents.  The documents do not include the personnel files for Defendants Howell and Restrepo.

2016). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

These basic tenets have led courts to adopt a "serve-and-volley" approach to resolving motions to quash. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). First, the subpoenaing party bears the burden of showing that "its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1)." *Id*. Once the subpoenaing party meets its burden, the burden moves to the subpoenaed non-party to show the requested information is protected from disclosure under Rule 45(d)(3)(A) or (B). *Id*. And then further, "[i]f the subpoenaed nonparty claims the protections under Rule 45(d)(3)(B) or asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A)[iv], it must show that disclosure will cause a clearly defined and serious injury. This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." *Id*.

Finally, a subpoenaed non-party who withholds materials requested by subpoena under a claim that it is privileged must expressly make the claim and describe the nature of the documents withheld in a manner that, without revealing information itself privileged protected, will enable the parties to assess the claim. *See* Fed. R. Civ. Pro. 45(e)(2)(A).

### DISCUSSION

Although there is a motion to quash filed separately by Defendant Howell, the court concludes that the motion filed by HBP, which is the recipient of the subpoena, comprehensively argues all of the points raised by Defendant Howell as well presents additional arguments.  Plaintiff reached the same conclusion and only responded to HBP's motion.  (Doc. 39, p. 1 n.1.)  Accordingly, the court will address the arguments raised by HBP in this memorandum without specifically referencing Defendant Howell's motion, but will resolve both motions based on the same analysis.

HBP moves to quash the subpoena or for a protective order in the alternative.  (Doc. 33, ¶ 7.)  However, as noted above, HBP has already produced some of the documents responsive to this subpoena, as well as a privilege log. Accordingly, the court understands that HBP is seeking to quash only the outstanding requests in the subpoena that remain disputed, which is limited to the following categories of documents requested by Plaintiff in the subpoena:

6

1) Defendant Restrepo and Howell's entire history and collection of citizen complaints.  (Doc. 33-3, p. 5, bullets 7 and 8.)

2) All Internal Affairs records and supervisory reviews and disciplinary history of Defendants Restrepo and Howell.  (Doc. 33-3, p. 5, bullet 9.)

3) The entire unredacted personnel file of Defendants Restrepo and Howell. (Doc. 33-3, p. 5, bullet 12.)

(Doc. 33, ¶¶ 8–10.)  The court assumes that there is no dispute at this time regarding the remaining 13 categories of documents requested in the subpoena to HBP.

With respect to the first and second categories (which the court will refer to collectively as the "Internal Affairs" documents), HBP argues first that the requests should be quashed because they are overly broad, burdensome, not relevant, and not proportional to the needs of the case.  (Doc. 33, ¶¶ 11, 14.)  HBP also argues that the requests should be quashed because the Internal Affairs documents are protected by the deliberative process privilege, which is invoked by the Commissioner of the City of Harrisburg Bureau of Police by Affidavit attached to their motion.  (Doc. 33, ¶¶ 12, 13; Doc. 33-4.)  With respect to the third category (which the court will refer to as the "officer personnel files"), HBP argues that the request should be quashed because the officer personnel files contain confidential, private, and highly sensitive information that is not relevant to Plaintiff's claims,

and is overly broad and disproportionate to the discovery needs of the case. (Doc. 33, ¶ 15.) HBP asks the court to quash these requests in the subpoena entirely, or in the alternative, to order production pursuant to a protective order prohibiting Plaintiff from disclosing these documents to third parties. (Doc. 33, p. 5.)

Plaintiff argues in opposition that all of the materials requested are relevant for discovery purposes because they relate either to Plaintiff's claim for punitive damages or to the defense of qualified immunity, or they may be relevant as evidence of prior acts pursuant to Federal Rule of Evidence 404(b)(2). (Doc. 39, pp. 6–8.) Plaintiff asserts that names or identifying information about non-parties can be redacted, and the proportionality argument should not prevail in this case because of the importance of the issues in the case. (*Id.*, pp. 8–9.) Plaintiff also argues that the deliberative process privilege does not apply to Defendants' personnel files and aspects of their Internal Affairs files, including complaints and disciplinary reports, including factual recitations or final findings memorialized during Internal Affairs investigations regarding Defendants' past use of force. (*Id.*, pp. 3–5.)

### A. Some of Plaintiff's Requests are Relevant For Discovery In This Case.

The court will address the arguments regarding the relevance of the requests for each category of documents. Plaintiff bears the burden of showing that his "requests are relevant to its claims or defenses, within the meaning of Federal Rule

8

of Civil Procedure 26(b)(1)." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239. If Plaintiff meets his burden, the burden moves to HBP to show the requested information is protected from disclosure under Rule 45(d)(3)(A) or (B) or is otherwise overly broad or disproportionate. *Id*. The court will address the arguments regarding Defendants' personnel files first and then the Internal Affairs documents.

### 1. Plaintiff Has Not Shown That Defendants' Personnel Files Are Relevant.

Plaintiff must show that his request for Defendants' entire personnel file is relevant to the claims or defenses in this case. In its motion and brief in support, HBP clearly challenges the relevance of Defendants' personnel files. (Doc. 33, ¶ 15; Doc. 34, pp. 9–11.) In his brief in opposition, Plaintiff does not show that his request for Defendants' personnel files is relevant to any claim or issue in this case. In fact, Plaintiff does not specifically respond to this relevance challenge at all. Because Plaintiff has not met his burden of showing the relevance of this request, the motion to quash is granted with respect to the third request at issue for Defendants' entire personnel files.

### 2. Plaintiff Has Shown that Some of the Internal Affairs Documents Are Relevant.

HBP has challenged the relevance and breadth of Plaintiff's request for certain Internal Affairs documents. Specifically, HBP challenges the relevance

and breadth of the request for the "entire history and collection of citizen complaints" and "[a]ll Internal Affairs records and supervisory reviews, [and] disciplinary history" for both officers.  (*See* Doc. 34, pp. 19–24; quotations from Doc. 33-3, p. 5.)  HBP specifically argues that any Internal Affairs records unrelated to the incident involving Plaintiff showing exclusively that the officers violated department policy are irrelevant to the constitutional claims of use of excessive force in this case.  (Doc. 34, pp. 20–21.)  HBP also asserts that Plaintiff's request is overly broad because it is not limited by topic or time period, which implicates documents related to investigations of other police officers or to investigations of Defendant officers for complaints unrelated to allegations of excessive use of force.  (*Id*., pp. 21–22.)  HBP also argues that the disclosure of documents unrelated to the incident is unduly burdensome because it would cause harm that outweighs any potential relevance of the documents, including a chilling effect on the motivation of police officers and citizens to report concerns about police conduct or participate in investigations.  (*Id*., pp. 22–23.)  HBP also notes that the Internal Affairs records include confidential information about non-party citizens and other HBP employees who are not parties in this litigation.  (*Id*., p. 23.)  Finally, HBP points out that Plaintiff did not plead a *Monell* claim in this case against the City of Harrisburg or the HBP, which must be remembered when assessing relevance.  (*Id*., pp. 23–24.)

In response, Plaintiff clarifies the scope of his request for Internal Affairs records.  Plaintiff states that his request is limited to Internal Affairs records relating to citizen or officer complaints regarding past use of force by Defendants Howell and/or Restrepo.  (Doc. 39, p. 5 n.2.)  The court understands Plaintiff's reference to "complaints regarding past use of force" to mean allegations of excessive use of force by Defendants prior to the date of the incident in this lawsuit, March 19, 2023.

As clarified, Plaintiff maintains that such records may be relevant with respect to his demand for punitive damages in this case and with respect to a qualified immunity defense raised by Defendants.  (*Id*., pp. 6–7.)  Plaintiff argues that such records also may be admissible to show knowledge and absence of mistake pursuant to Federal Rule of Evidence 404(b)(2).  (*Id*., pp. 7–8.)  Although Plaintiff has not asserted a *Monell* claim in this case, he responds that the absence of that claim does not *per se* preclude the production of the requested records (as clarified).  (*Id*., p. 8.)  To the extent that responsive records contain names or identifying information of non-parties, Plaintiff suggests that they may be produced pursuant to the parties' confidentiality order.  (*Id*.)  Finally, Plaintiff responds to HBP's policy argument about undue burden by asserting the importance of the civil rights issues being litigated in this case.  (*Id*., p. 9.)

In reply, HBP points out that Plaintiff did not request officer complaints about Defendants; Plaintiff only requested citizen complaints in Exhibit A to the subpoena.  (Doc. 43, p. 8.)  HBP also maintains that Plaintiff's reference to "use of force" is unduly broad, because that would include reports that are not relevantly similar to the incident at issue, such as when an officer displayed but did not use his taser.  (*Id.*, pp. 8–9.)  HBP summarizes that "use of force reports that were not subject to a citizen's complaint for the alleged use of 'excessive force' are not relevant to Plaintiff's claims and should not be subject to production."  (*Id.*, p. 9.)

Taking into account Plaintiff's clarification of the scope of his request, the court concludes that the request for Internal Affairs documentation relating to citizen complaints about Defendants Howell and Restrepo allegedly using excessive force in a manner similar to the incident at issue in this lawsuit prior to the incident in question is relevant to the claims in this case, including the demand for punitive damages, and is not excessively broad.  As well, the Internal Affairs documentation relating to the incident in question is relevant and not excessively broad.  Documents that do not match these criteria are not relevant.

Based on this determination of relevance, the court has reviewed the Internal Affairs records produced by HBP for *in camera* review, and has identified the following relevant records that potentially must be produced (by reference to the bates numbering provided by HBP):

12

1. HBG-1 to HBG-55 (documents relating to the citizen complaint filed regarding the incident at issue in this lawsuit on March 19, 2023 with incident number HC-23-014837);

2. HBG-111 to HBG-114 (documents relating to an incident on February 27, 2023 involving Officer Restrepo with incident number HC-23-023047);

The court has identified the following records that are not relevant to the claims or defenses in this case, and, accordingly, HBP's motion to quash will be granted with respect to these records:

1. HBG-56 to HBG-81 and HBG-92 to HBG-102 (documents related to citizen complaints filed regarding an incident on July 20, 2024 that post-dates the incident at issue in this lawsuit with incident number HC-24-043734);

2. HBG-82 to HBG-91 (documents related to incidents on March 8 and 15, 2025 that post-date the incident at issue with no noted incident number);

3. HBG-103 to HBG-105 (documents related to a public complaint regarding a March 7, 2022 incident with incident number HC-22-007963 that is not similar to the incident at issue);

4.  HBG-106 to HBG-110 (documents related to a public complaint regarding a December 15, 2021 incident with incident number HC-21-029197 that is not similar to the incident at issue);

5.  HBG-115 to HBG-122 (documents related to an incident on July 7, 2024 that post-dates the incident at issues with incident number HC-24-040870);

6.  HBG-123 to HBG-179 (documents related to an investigation arising from an incident on June 6, 2021 with incident number HC-21-012975 that is not similar to the incident at issue);

7.  HBG-180 to HBG-199 and audio files (documents and audio files related to citizens complaint filed regarding an incident on January 27, 2025 that post-dates the incident at issue in this lawsuit with incident number HC-25-005349 that is not similar to the incident at issue);

8.  HBG-200 to HBG-231 (documents related to citizens complaint filed regarding incident on May 23, 2022 with incident number HC-22-011440 that is not similar to the incident at issue);

9.  HBG-232 to HBG-238 (documents related to citizens complaint filed regarding incident on November 22, 2022 with incident number HC-22-025805 that is not similar to the incident at issue);

14

10. HBG-239 to HBG-251 (documents related to citizens complaint filed regarding incident on April 21, 2022 with incident number HC-22-009113 that is not similar to the incident at issue);

11. HBG-252 to HBG-270 (documents related to citizens complaint filed regarding incident on June 1, 2022 with incident number HC-22-002308 that is not similar to the incident at issue);

12. HBG-271 to HBG-276 (documents related to citizens complaint filed regarding incident on May 23, 2022 that post-dates the incident at issue in this lawsuit with incident number HC-22-011440 that is not similar to the incident at issue);

13. HBG-277 to HBG-282 (documents related to citizens complaint filed regarding incident on July 28, 2021 with incident number HC-21-017752 that is not similar to the incident at issue);

14. HBG-283 to HBG-310 (documents related to unrelated incident with no citizen complaint and no use of force); and

15. HBG-311 to HBG-347 (documents related to use of force review regarding incident on March 15, 2025 that post-dates the incident at issue in this lawsuit with incident number HC-25-015482).

Next, the court will consider the arguments related to deliberative process privilege with respect to the universe of relevant documents identified above.

**B. The Relevant Internal Affairs Documents Are Not Protected by the Deliberative Process Privilege.**

HBP maintains that many of the Internal Affairs documents produced for *in camera* review are protected from disclosure by the deliberative process privilege. (Doc. 34, pp. 13–19.)  HBP attached to their motion the Affidavit of Commissioner Thomas C. Carter, who is the Commissioner of HBP.  (Doc. 33-4.)  As the head of HBP, Commissioner Carter formally invokes the deliberative process privilege over the citizen complaints and Internal Affairs documents at issue and explains the reasons why he believes such documents should be protected from disclosure and the harm that would occur if they are produced.  (*Id*.)

HBP acknowledges that the privilege protects only information that is pre-decisional and deliberative, and then asserts that a majority of the Internal Affairs documents at issue meet these criteria.  (*Id*., pp. 15–17.)  However, HBP notes that material that is factual only is generally not protected.  (*Id*., p. 17.)  HBP then offers that Use of Force Reports and Inter-Departmental Communications of officers, which contain purely factual accounts of incidents, are not protected by the privilege.  (*Id*.)  Conversely, HBP contends that "the documents which set forth the processes of the Bureau in completing internal investigations, particularly the formal reports of the internal affairs unit, constitute pre-decisional and deliberative material that is expressly shielded by the privilege."  (*Id*.)

Plaintiff does not present any argument that Commissioner Carter's affidavit is deficient.  (Doc. 39.)  And, Plaintiff agrees with HBP that "intermediate, pre-decisional Internal Affairs reports discussing the investigative process of Bureau policy-making are subject to the deliberative process privilege."  (Doc. 39, p. 5.)  However, Plaintiff asserts that the privilege does not protect "factual recitations or final (*i.e.*, non pre-decisional) findings memorialized during Internal Affairs investigations . . . ."  (*Id.*)

The deliberative-process privilege is the most frequently invoked executive privilege.  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *Chisler v. Johnston*, 796 F. Supp. 2d 632, 639–40 (W.D. Pa. 2011).  It shields from production "documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'"  *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)).  The goal of "this long-recognized privilege is to prevent injury to the quality of agency decisions."  *Id.* at 854 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)).  Indeed, "those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process."  *Sears*, 421 U.S. at 150–51 (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)).

17

A particular process governs the invocation of executive privileges, including the deliberative-process privilege.  The Supreme Court long ago held that to invoke such privileges, "[t]here must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."  *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953) (footnote omitted).  *Reynolds* specifically dealt with a "claim of privilege for state and miliary secrets," but "its prerequisites for formal invocation of the privilege have been uniformly applied irrespective of the particular kind of executive claim advanced."  *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (quoting *Carter v. Carlson*, 56 F.R.D. 9, 10 (D.D.C. 1972)).

To be clear, the deliberative process privilege does not protect factual information, even if such information is contained in an otherwise privileged document, as long as the information is severable.  *Holt v City of Harrisburg*, 19-cv-1986, 2021 WL 5233317 at *3 (M.D. Pa. Nov. 10, 2021) (citing *In re Grand Jury*, 821 F.2d at 959).)  As well, this privilege does not apply to documents that embody a final agency decision, because such a document is definitionally not pre-decisional.  *Holt*, 2021 WL 5233317 at *4 (citing *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 186 (1975)).  Documents are "pre-decisional" if they were generated before the agency's final decision on the matter,

18

and they are "deliberative" if they were prepared to help the agency make its final decision.  *See Sears*, 421 U.S. at 150–152.

Even assuming the agency makes a sufficient showing that the privilege applies, the court must then balance the competing interests of the parties.  The party seeking discovery bears the burden of showing that its need for the documents outweighs the agency's interest in protecting the documents.  *See Reid v. Cumberland County*, 34 F. Supp. 3d 396, 406 (D. N.J. 2013).  The Third Circuit has identified factors to consider when conducting this step in the analysis, including: 1) the relevance of the evidence sought to be protected; 2) the availability of other evidence; 3) the seriousness of the litigation and the issues involved; 4) the role of the government in the litigation; and 6) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.  *Redland Soccer Club, Inc.*, 55 F.3d at 854 (citing *First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)).

Applying this legal standard only to the subset of Internal Affairs documents reviewed *in camera* and already determined to be relevant, the court concludes that there are no documents in this subset protected by the deliberative process privilege.  Upon careful review, these document contain strictly factual information, a final agency decision, or communication of a final agency decision.  These documents include HBG-1 to HBG-55 and HBG-111 to HBG-114.  These

19

documents shall be produced subject to the parties' confidentiality agreement, Doc. 44.

## CONCLUSION

For the above-stated reasons, the court **ORDERS AS FOLLOWS**:

1. The motions to quash filed by non-party HBP and Defendant Howell, Docs. 32 and 33, are **GRANTED IN PART AND DENIED IN PART**.

2. The motions to quash are granted with respect to the Plaintiff's subpoena request for HBP to produce the "entire unredacted personnel file of Restrepo and Howell."

3. The motions to quash are granted with respect to the Internal Affairs documents submitted for *in camera* review that have been determined to be not relevant to the claims or defenses at issue in this lawsuit as detailed above.

4. The motions to quash are denied with respect to the Internal Affairs documents submitted for *in camera* review that have been determined to be relevant to the claims or defenses at issue in this lawsuit and not subject to the deliberative process privilege.

5. HBP shall produce the following documents to Plaintiff **by Friday, July 31, 2026**, subject to the parties' confidentiality agreement at Doc. 44: HBG-1 to HBG-55 and HBG-111 to HBG-114.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Date:  July 27, 2026